[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 1224.]

KOVACS ET AL., APPELLEES, *v.* BAUER; A.D.T. SECURITY SYSTEMS MIDSOUTH,

INC. ET AL., APPELLANTS.

[Cite as *Kovacs v. Bauer*, 1998-Ohio-658.]

*Appeal dismissed as improvidently allowed.*

(No. 96-2004—Submitted November 5, 1997—Decided January 7, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 69400.

————————————

*Louis G. Henderson*, for appellees.

*Weston, Hurd, Fallon, Paisley & Howley, LLP., William H. Baughman, Jr.,*
and *Gary W. Johnson*, for appellants.

————————————

{¶ 1} The appeal is dismissed, *sua sponte*, as having been improvidently
allowed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ.,
concur.

LUNDBERG STRATTON, J., dissents.

————————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 2} I respectfully dissent from the majority's decision to dismiss this case
as having been improvidently allowed.

{¶ 3} Melissa Kovacs was employed by ADT Security Systems MidSouth,
Inc. ("ADT") on March 18, 1992. On August 13, 1992, Kovacs took maternity
leave and gave birth to a son two weeks later. As a result of her delivery, Kovacs
developed a recto-vaginal fistula. Kovacs returned to work on October 4, 1992, but
learned from her treating physician that her condition required surgery.

**{¶ 4}** Kovacs presented ADT with a request for time off from January 11, 1993 to March 1, 1993 for surgery and recovery time, which ADT granted. Kovacs also provided ADT with a "Disability Certificate," dated December 11, 1992, signed by her treating physician, Dr. Henry W. Eisenberg. After her out-patient surgery, Kovacs provided ADT with an "Attending Physician Report" advising ADT that she was experiencing "delayed healing," and might "return to work on March 1, 1993 (not before this date)."

**{¶ 5}** On January 22, 1993, Kovacs received a letter from Barry P. Kinney, the Regional General Manager of ADT, Cleveland Office, advising Kovacs that an appointment had been scheduled for her to have a second-opinion medical examination on January 27, 1993. The letter stated that the request for the second opinion was because the Disability Certificate, signed by Kovacs's physician, Dr. Eisenberg, was dated December 11, 1992, one month prior to her surgery, with a return-to-duty date of March 1, 1993. Further, Kinney informed Kovacs that all company benefits would be withheld pending the report from the examination.

**{¶ 6}** Kovacs discussed the request for a second-opinion medical examination with Dr. Eisenberg. Due to the fear of a possible recurrence of the recto-vaginal fistula, Dr. Eisenberg advised Kovacs not to have any pelvic or rectal examinations until the healing from her surgery was complete, which would be approximately six to eight weeks after surgery. Further, Kovacs was displeased with ADT's choice of physician, so she canceled the appointment that ADT had made for her.

**{¶ 7}** On February 8, 1993, Kovacs received a telephone call from Virginia Haupt, at ADT, advising that a second-opinion examination had been scheduled for February 10, 1993, with Dr. Joseph Bauer. Dr. Bauer was recommended by the Cleveland Academy of Medicine to perform the disability medical examination because he had qualifications parallel with those of Kovacs's personal physician.

That same day, Kovacs went to the ADT office and spoke with Kinney and her supervisor, Christine Bruce.

{¶ 8} At this meeting, Kinney advised Kovacs that he thought she was "conning" the company, and that there was some confusion regarding her return-to-work date. Apparently, during Kovacs's employment, ADT inadvertently paid Kovacs a bonus, and she failed to report the overpayment. Kinney further advised Kovacs that her disability benefits would be in jeopardy if she did not have the second-opinion examination. Kovacs informed Kinney that the company could terminate her disability benefits as long as she did not have to have the second-opinion examination, but Kinney told her that was not an option. Jeffrey C. Geer, head of the Human Resources Department for ADT, confirmed ADT's right to require a second-opinion examination.

{¶ 9} Kovacs attended the second-opinion examination with Dr. Joseph A. Bauer. After the second-opinion examination, Dr. Bauer confirmed the recommended recovery period. Subsequent to Dr. Bauer's examination, Kovacs suffered a recurrence of her recto-vaginal fistula, which required further surgery. After an additional recuperation period, Kovacs requested and received her accrued vacation. At the expiration of her vacation period, Kovacs again applied for and received disability benefits. Kovacs later resigned from ADT on July 19, 1993, having never returned to work.

{¶ 10} Kovacs and her husband, Christopher, filed a complaint against ADT, Barry Kinney, Christine Bruce, Jeff Geer, and Dr. Bauer. In her amended complaint, Kovacs alleged that Kinney, Bruce, and Geer, while acting in the course and scope of their employment, intentionally caused her physical and emotional injury. Further, Kovacs alleged medical malpractice against Dr. Bauer. ADT, Kinney, Bruce, and Geer moved for summary judgment. Kovacs dismissed her cause of action against Bruce and Geer and filed a brief in opposition to ADT's and Kinney's motions for summary judgment. The trial court granted summary

judgment in favor of ADT, Kinney, Bruce, and Geer. The malpractice case remains pending for trial.

{¶ 11} Kovacs timely appealed the summary judgment in favor of ADT and Kinney to the Court of Appeals for Cuyahoga County, arguing that the trial court erred in granting summary judgment on her claim of intentional infliction of emotional distress. The court of appeals held that summary judgment was incorrect. Accordingly, the court of appeals reversed and remanded for trial.

{¶ 12} This cause is now before us pursuant to the allowance of a discretionary appeal.

{¶ 13} The question presented in this appeal is whether there were genuine issues of material fact as to whether Kinney's and ADT's actions constituted intentional infliction of emotional distress. Because I would find that summary judgment was proper, I respectfully dissent.

{¶ 14} Civ.R. 56(C) provides:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 15} This court first recognized the tort of intentional infliction of emotional distress in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, and adopted the standard established in 1 Restatement of the Law 2d, Torts (1965) 71, Section 46(1), which provides, "One who by extreme and

4

outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

{¶ 16} The Application for Sickness Disability Benefits reveals that Kovacs's first full day absent from work was January 11, 1993 and her date of return to duty was March 1, 1993. The application reflects that Kinney signed it on February 1, 1993. On February 8, 1993, Kovacs met with Kinney and he informed her that he believed she was "conning" the company and he was requesting a second-opinion medical examination. Thus, Kovacs argues that Kinney knew during the February 8, 1993 meeting that he had already approved her disability leave. Therefore, Kovacs would have us find that because Kinney had already approved the disability, yet forced her to undergo the second-opinion examination, this somehow amounts to an intentional infliction of emotional distress.

{¶ 17} However, an actor is "never liable * * * where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement of Torts 2d at 76, Section 46, Comment *g*. The Summary Plan Description of ADT's Sickness and Accident Plan provides, "The Company will require documentation from your physician to substantiate your claim for benefits and may also require you to have a medical examination by a physician of the Company's choice at the Company's expense."

{¶ 18} ADT had a clear legal right to condition Kovacs's disability benefits on a second-opinion medical examination by a physician of the company's choosing. Kovacs has admitted that neither Kinney nor any other representative of ADT ever threatened Kovacs with loss of her job for failure to submit to the second-opinion medical examination. In addition, even if we were to construe Kinney's signing the application as an approval, which Kinney denies, the disability application still had not been approved by company headquarters, and ADT

reserved the right to disapprove further leave if the second opinion did not support such a leave. Thus, the issue of when Kinney signed the application is immaterial.

{¶ 19} In addition, I would adopt the reasoning of Judge James M. Porter's dissent below on two points. First, I would find that Kovacs did not establish that ADT's conduct was the proximate cause of her alleged injuries. Dr. Bauer's acts were an intervening cause, entirely independent of ADT's conduct, which severed any causal relationship between ADT's acts and Kovacs's subsequent injuries. See *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014.

{¶ 20} Second, I would also find that there was no reason for ADT to foresee that a Harvard-trained, board-certified physician (Dr. Bauer), recommended by the Cleveland Academy of Medicine, would, regardless of the circumstances, act in a negligent manner or cause further injury to the plaintiff. In *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859, we stated:

"Whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence." *Id.* at 39, 41 O.O. at 121, 90 N.E.2d at 863.

{¶ 21} While I am sympathetic to the delayed healing and reparative surgery Kovacs experienced, Kovacs simply did not establish a prima facie case of intentional infliction of emotional distress. Accordingly, for the reasons expressed above, I dissent and would reverse the judgment of the court of appeals and find that summary judgment was properly entered in the defendants' favor.

———————————